## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRUCE A. PENMAN, | ) | Case No. 18-19464 JGR |
| | ) | Chapter 7 |
| Debtor. | ) | |
| —————————————————— | ) | |
| | ) | |
| LYNN H. MARTINEZ, TRUSTEE, | ) | Adv. Pro. No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VELOCITY SOLUTIONS GROUP, LLC, | ) | |
| THEODORE H. MERRIAM, P.C. d/b/a | ) | |
| MERRIAM LAW FIRM, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Lynn H. Martinez, trustee, by and through her undersigned counsel, for her complaint against Defendants Velocity Solutions Group, LLC and Theodore H. Merriam, P.C., d/b/a Merriam Law Firm, P.C., states as follows:

## PARTIES AND JURISDICTION

1.     Bruce A. Penman ("**Debtor**") filed his voluntary Chapter 7 petition on October 30, 2018 ("**Petition Date**").

2.     Plaintiff Lynn H. Martinez is the duly qualified and acting trustee ("**Trustee**") of the Debtor's Chapter 7 bankruptcy estate ("**Estate**").

3.     Defendant Velocity Solutions Group, LLC, f/k/a Velocity Cabling & Network Solutions, LLC ("**Velocity**") is an Arizona limited liability company.

4.     Defendant Theodore H. Merriam, P.C., d/b/a Merriam Law Firm, P.C. ("**Merriam**"), is a Colorado professional corporation.

5.     Defendant Merriam is a law firm that provided legal services to the Debtor and Velocity during 2018.

6.     This is a complaint to avoid fraudulent and/or preferential transfers.  The Court has subject matter jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b). This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), and (O).

7.     Pursuant to 28 U.S.C. § 1409(a), venue is proper in this district because the Debtor's bankruptcy case is pending in this district.

### GENERAL ALLEGATIONS

**A.     The Current Status of Velocity.**

8.     Prior to the Petition Date, the Debtor was the sole member of Velocity.

9.     On the Petition Date, the Debtor's membership interest in Velocity became property of the Estate, pursuant to 11 U.S.C. § 541.

10.     Because Velocity was wholly-owned by the Debtor, the Trustee now holds the exclusive right to control management of Velocity.  *In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003).

11.     Although the Trustee has not, to date, removed the Debtor as manager of Velocity, the Trustee has instructed the Debtor to take no action on Velocity's behalf without prior written approval of the Trustee.

**B.     History of the Debtor's Financial Problems.**

12.     During 2015, the Debtor attempted to grow Velocity's business, but Velocity and the Debtor wound up experiencing severe financial problems.  Among other things:

    a.     Velocity ended 2015 with an operating loss in excess of $200,000.00.

    b.     Velocity failed to pay $167,678.28 in federal wage taxes due for 2015.

    c.     Velocity incurred numerous debts in 2015, which were personally guaranteed by the Debtor.  Many of the larger debts that were guaranteed by the Debtor remained unpaid through the Petition Date and were listed by the Debtor in his schedules.

    d.     For tax years prior to and including 2015, the Debtor and his wife, Margaret Penman, filed joint federal returns.  The Penmans' adjusted gross income for the calendar year 2015, plummeted in comparison to the two prior years, as follows:

| Year | Gross Inc. |
|------|------------|
| 2013 | $150,752 |
| 2014 | $258,275 |
| 2015 | ($228,198) |

2

e.      The principal reason for the Penmans' loss in 2015 was the failure of Velocity.

13.     For tax years prior to 2016, the Penmans filed joint tax returns.  However, commencing in 2016, the Penmans filed separate tax returns due to the losses suffered by Velocity.

14.     During 2016, the financial condition of Velocity and the Debtor continued to deteriorate.  Among other things:

a.      Velocity reported an ordinary business loss of $1,986,278.00 on its 2016 Form 1120S.

b.      In an effort to keep afloat, on May 27, 2016, Velocity entered into a written agreement with Skyhawk, Inc. ("**Skyhawk**"), pursuant to which Skyhawk provided staffing (labor) services to Velocity.  The Debtor personally guaranteed Velocity's obligations to Skyhawk.

c.      On June 7, 2016 – less than two weeks after signing the Skyhawk contract – Velocity defaulted in its monetary obligations to Skyhawk.

d.      On August 2, 2016, Velocity entered into a written agreement with LSQ Funding Group L.C. ("**LSQ**"), pursuant to which LSQ agreed to factor certain of Velocity's accounts receivable.  The Debtor personally guaranteed Velocity's obligations to LSQ.

15.     During 2017, the financial condition of Velocity and the Debtor continued to deteriorate, leading to the failure of Velocity.  Among other things:

a.      Velocity reported an ordinary business loss of $2,583,514.00 on its 2017 Form 1120S.

b.      Velocity failed to pay $301,718.93 in federal wage taxes for 2017.

c.      On or about March 2, 2017, Skyhawk, Velocity, and the Debtor entered into a settlement agreement, wherein the Debtor and Velocity acknowledged that they owed Skyhawk $603,461.79.  The Debtor and Velocity agreed to make weekly payments to Skyhawk to satisfy this sum. However, the Debtor and Velocity subsequently defaulted.

d.      On June 13, 2017, Arrow and Velocity entered into a settlement agreement, wherein Velocity acknowledged that it owed Arrow $92,177.20. Velocity agreed to make monthly payments to Arrow to satisfy this sum, and the Debtor guaranteed Velocity's payment obligation. However, neither Velocity nor the Debtor made any of the payments to Arrow.

e.    In July of 2017, the Debtor closed Velocity's principal bank account at Opus Bank and the Debtor began liquidating Velocity's remaining assets.

f.    In August of 2017, Velocity ceased its business operations.

16.    During 2017, the creditors of the Debtor and Velocity took the following actions (among others):

a.    On June 12, 2017, creditor Anixter, Inc. commenced a collection action against the Debtor and Velocity in an Arizona state court.

b.    On July 19, 2017, creditor Gary Childs commenced a collection against the Debtor and Velocity in a California state court.

c.    On September 15, 2017, Arrow Wire and Cable, Inc. ("**Arrow**") commenced a collection against the Debtor and Velocity in the Denver District Court.

d.    On October 26, 2017, Skyhawk obtained a judgment against the Debtor and Velocity in a California state court, in the amount of $453,461.79.

e.    On November 22, 2017, Arrow obtained a judgment against the Debtor and Velocity in the amount of $93,795.83.

f.    On December 22, 2017, Skyhawk registered its judgment against the Debtor and Velocity in the District Court of Douglas County, Colorado.

17.    During 2018, the Debtor's creditors took the following additional actions:

a.    On January 23, 2018, Skyhawk recorded a transcript of judgment against the Debtor in the Office of the Douglas County Clerk and Recorder.

b.    On January 29, 2018, Arrow recorded a transcript of judgment against the Debtor in the Office of the Douglas County Clerk and Recorder.

c.    On February 23, 2018, Arrow served post-judgment interrogatories on both the Debtor and Velocity.  The Debtor and Velocity failed to respond to the post-judgment interrogatories.  The interrogatories were pattern interrogatories, pursuant to C.R.C.P. 369(g).  Among other things, the interrogatories required the Debtor and Velocity to disclose the existence of their bank accounts.

d.    On May 22, 2018, the IRS recorded a notice of federal tax lien against the Debtor in the Office of the Douglas County Clerk and Recorder.

e.    On or about June 21, 2018, Arrow served a writ of garnishment on the Debtor's then-employer, Facility.

f.      On September 21, 2018, LSQ commenced a collection against the Debtor and Velocity (and others) in a Florida state court.

g.      On September 26, 2018, Skyhawk served a writ of garnishment on Guaranty Bank & Trust, where the Debtor had a personal checking account (discussed below).

h.      On October 17, 2018, Skyhawk served post-judgment interrogatories on the Debtor.

## C.   The Cashier's Check Scheme.

18.     On August 11, 2017, the Debtor opened an account at Guaranty Bank & Trust in the name of "Velocity Solutions Group LLC / Bruce A. Penman / Jessica A. Penman" ("**Velocity's GB&T Account**").

19.     From December 19, 2017 through the morning of January 2, 2018, the balance held in Velocity's GB&T Account was $71,232.77. That sum was comprised of the proceeds of Velocity's accounts receivable and the proceeds of the sale of certain of Velocity's remaining assets.

20.     Both LSQ and Skyhawk held security interests in Velocity's accounts receivable (and other assets) and the proceeds thereof, pursuant to their agreements with Velocity.

21.     Moreover, as reflected above, by December 31, 2017, at least four creditors of the Debtor and Velocity (Anixter, Inc., Gary Childs, Arrow, and Skyhawk) had commenced lawsuits against the Debtor and Velocity, and two of those creditors (Arrow and Skyhawk) had obtained judgments against the Debtor and Velocity in Colorado.

22.     Commencing on January 2, 2018, the Debtor caused Velocity to purchase a series of cashier's checks to deplete the $71,232.77 balance in Velocity's GB&T Account. As additional funds were deposited into Velocity's GB&T Account, the Debtor promptly caused Velocity to purchase additional cashier's checks to deplete the subsequent balances to nominal sums.

23.     On February 2, 2018 and March 30, 2018, the Debtor caused Velocity to purchase cashier's checks payable to the Internal Revenue Service in the amounts of $16,600.00 and $14,400.00, respectively. The purchases of these cashier's checks brought the then-remaining balances of funds in Velocity's GB&T Account to nominal sums ($43.99 and $2.58, respectively). However, the Debtor did not transmit the cashier's checks to IRS. Instead, the Debtor held the cashier's checks until May 25, 2018, on which date he caused the amounts to be re-credited to Velocity's GB&T Account and then disbursed to himself as part of a $37,440.10 cashier's check, described below.

24.     None of the cashier's checks purchased by Velocity were paid to any of the creditors who had commenced collection actions or who held security interests in Velocity's receivables or other assets. Instead, the largest cashier's checks purchased by Velocity were paid to Facility (then-owned entirely by Margaret Penman) and to the Debtor himself.

25.     On February 2, 2018, the Debtor opened an additional account at Guaranty Bank & Trust in the name of "Bruce Allan Penman" ("**Debtor's GB&T Account**").

26.     Deposits to the Debtor's GB&T Account included (non-exclusively) funds from the following sources:

| Source | Date(s) | Amount(s) |
|---|---|---|
| Facility | 2/2/18 to 4/27/18 | $11,368.00 |
| Virtus Communications, LLC | 3/2/18 to 4/27/18 | $ 6,836.25 |
| Velocity | 9/12/18 | $37,440.10 |

27.     Velocity's $37,440.10 payment to the Debtor was made by a single cashier's check that the Debtor caused Velocity to purchase from Guaranty Bank & Trust on May 29, 2018.  The Debtor's receipt of this check was not disclosed in his Statement of Financial Affairs.

28.     The Debtor held the $37,440.10 cashier's check from Velocity from May 29, 2018 to September 12, 2018 – approximately three and a half months.  During this period at least two of the Debtor's creditors (Skyhawk and Arrow) had live judgments against the Debtor and both had begun enforcement activities.  As noted above, Arrow had already served interrogatories that required the disclosure to the Debtor's GB&T Account and Velocity's GB&T Account, and both the Debtor and Velocity failed to respond.

29.     On September 12, 2018, the Debtor deposited the $37,440.10 cashier's check into the Debtor's GB&T Account and, on the same day, the Debtor used the proceeds as follows:

  a.     The Debtor withdrew $4,000.00 in cash.

  b.     The Debtor purchased a $10,115.00 cashier's check, made payable to Capital Accounting, an Arizona accounting firm.

  c.     The Debtor purchased a $5,000.00 cashier's check, made payable to Defendant Merriam.

  d.     The Debtor purchased an $18,325.10 cashier's check, made payable to himself.

30.     As noted above, on September 26, 2018, Skyhawk served a writ of garnishment on the Debtor's GB&T Account.  Had the Debtor not withdrawn the $4,000.00 in cash and purchased an $18,325.10 cashier's check payable to himself on September 12, 2018, Skyhawk would have garnished $22,325.10 on September 26, 2018.  Instead, the Debtor successfully avoided Skyhawk's garnishment.

31.     None of the cashier's checks purchased by the Debtor on September 12, 2018 were disclosed in the Debtor's Statement of Financial Affairs.

32.     The Debtor held the $18,325.10 cashier's check from September 12, 2018 to October 11, 2018.

33.     On October 11, 2018, the Debtor deposited the $18,325.10 cashier's check into *Velocity's GB&T Account* and, on the same day, caused *Velocity* to purchase four cashier's checks, as follows:

      a.     A $4,000.00 cashier's check, made payable to Capital Accounting.

      b.     A $5,000.00 cashier's check, made payable to the Defendant Merriam.

      c.     A $5,000.00 cashier's check, made payable to the Debtor's bankruptcy lawyer.

      d.     A $4,310.10 cashier's check, made payable to the Debtor.

34.     The Debtor's transfer of $18,325.10 to Velocity was not disclosed in the Debtor's Statement of Financial Affairs.  Moreover, none of the cashier's checks purchased by the Debtor on October 11, 2018 were disclosed in the Debtor's Statement of Financial Affairs.

35.     The Debtor held the $4,310.00 cashier's check from October 11, 2018 to October 26, 2018 (four days before the Petition Date).

36.     On October 26, 2018, the Debtor used the $4,310.00 cashier's check, along with other funds (the source of which is unknown) to purchase fourteen (14) additional cashier's checks from Guaranty Bank & Trust in the total amount of $12,045.98.

37.     Payees of the cashier's check comprising the $12,045.98 figure included the following:

| | |
|---|---|
| American Conservation & Billing | 66.87 |
| Black Hills Energy | 20.53 |
| Castle Rock Smiles | 39.80 |
| Century Link | 45.00 |
| Costco | 59.28 |
| Glover Family Medicine | 90.00 |
| King Soopers | 417.20 |
| Mountain View Electric | 67.50 |
| Mr. Cooper | 1,490.11 |
| Pediatrics of the Meadows | 88.53 |
| Pikes Peak Athletics | 57.50 |
| State Farm | 115.66 |
| Sundance Studios | 236.00 |
| US Department of Treasury | 9,252.00 |
| **TOTAL** | **12,045.98** |

38.     None of these cashier's checks were disclosed in the Debtor's Statement of Financial Affairs.

## FIRST CLAIM FOR RELIEF
### (11 U.S.C. §§ 544(a), 544(b), and 548(a)(1)(A)
### – Avoidance of Fraudulent Transfers)

39.     Plaintiff incorporates the foregoing allegations the same as if set forth herein verbatim.

40.     During the two-year period prior to the Petition Date, the Debtor transferred and concealed his funds through the use Velocity's GB&T Account, the Debtor's GB&T Account, and the various cashier's checks issued therefrom, with the intent to hinder, delay, or defraud his creditors.

41.     With the intent to hinder, delay, or defraud one or more of his then existing and/or future creditors:

        a.     On or about September 12, 2018, the Debtor transferred $5,000.00 to Defendant Merriam.

        b.     On or about October 11, 2018, the Debtor transferred $18,325.10 to Velocity and immediately caused Velocity to transfer $5,000.00 to Defendant Merriam.

42.     Pursuant to 11 U.S.C. § 544(a) and applicable non-bankruptcy law (including the Arizona UFTA and the Colorado UFTA), the Trustee, as a hypothetical creditor, may avoid the $5,000.00, $18,325.10, and $5,000.00 transfers.

43.     Pursuant to 11 U.S.C. § 544(b) and applicable non-bankruptcy law (including the Arizona UFTA and the Colorado UFTA), the Trustee, standing in the shoes of the Debtor's then-existing creditors and future creditors (including, non-exclusively, the IRS, Anixter, Inc., Gary Childs, Skyhawk, Arrow, or LSQ), may avoid the $5,000.00, $18,325.10, and $5,000.00 transfers.

44.     Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trustee may avoid the $5,000.00 and $18,325.10 transfers.

45.     Pursuant to 11 U.S.C. § 550(a)(1), the Trustee may recover $5,000.00 from Defendant Merriam and $18,325.10 from Defendant Velocity.

46.     Defendant Merriam is an immediate or mediate transferee of the $5,000.00 transfer.  Pursuant to 11 U.S.C. § 550(a)(2), the Trustee may recover the $5,000.00 transfer from Defendant Merriam.

WHEREFORE, Plaintiff Lynn H. Martinez, trustee, prays that the Court will enter judgment against Defendant Velocity Solutions Group, LLC in the amount of $18,325.10 and against Defendant Merriam in the amount of $10,000.00, along with costs and interest from the dates of the transfers, and for such other and further relief as is just.

## SECOND CLAIM FOR RELIEF
### (Alternative Relief - 11 U.S.C. §§ 544(a), 544(b),
### and 548(a)(1)(A) – Avoidance of Fraudulent Transfers)

47.    Plaintiff incorporates the foregoing allegations the same as if set forth herein verbatim.

48.    During the two-year period prior to the Petition Date, the Debtor transferred and concealed his funds through the use of Velocity's GB&T Account, the Debtor's GB&T Account, and the various cashier's checks issued therefrom, with the intent to hinder, delay, or defraud his creditors.

49.    On October 11, 2018, the Debtor used Velocity and Velocity's GB&T Account as a mere conduit, such that Velocity was never a transferee (initial or otherwise) of the $18,325.10 that the Debtor concealed and disbursed through Velocity's GB&T Account.

50.    With the intent to hinder, delay, or defraud one or more of this then existing and/or future creditors:

        a.    On or about September 12, 2018, the Debtor transferred $5,000.00 to Defendant Merriam.

        b.    On or about October 11, 2018, the Debtor transferred $5,000.00 to Defendant Merriam.

51.    Pursuant to 11 U.S.C. § 544(a) and applicable non-bankruptcy law (including the Arizona UFTA and the Colorado UFTA), the Trustee, as a hypothetical creditor, may avoid the two $5,000.00 transfers (totaling $10,000.00).

52.    Pursuant to 11 U.S.C. § 544(b) and applicable non-bankruptcy law (including the Arizona UFTA and the Colorado UFTA), the Trustee, standing in the shoes of the Debtor's then-existing creditors and future creditors (including, non-exclusively, the IRS, Anixter, Inc., Gary Childs, Skyhawk, Arrow, or LSQ), may avoid the two $5,000.00 transfers (totaling $10,000.00).

53.    Pursuant to 11 U.S.C. § 548(a)(1)(A), the Trustee may avoid the two $5,000.00 transfers (totaling $10,000).

54.    Pursuant to 11 U.S.C. § 550(a)(1), the Trustee may recover $10,000.00 from Defendant Merriam.

WHEREFORE, Plaintiff Lynn H. Martinez, trustee, prays that the Court will enter judgment against Defendant Merriam in the amount of $10,000.00, along with costs and interest from the dates of the transfers, and for such other and further relief as is just.

### THIRD CLAIM FOR RELIEF
### (11 U.S.C. § 547(b) – Avoidance of Preferential Transfers)

55.     Plaintiff incorporates the foregoing allegations the same as if set forth herein verbatim.

56.     During the 90-day period prior to the Petition Date, the Debtor transferred and concealed his funds through the use the Velocity GB&T Account, the Debtor's GB&T Account, and the various cashier's checks issued therefrom, with the intent to hinder, delay, or defraud his creditors.

    a.     On or about September 12, 2018, the Debtor transferred $5,000.00 to Defendant Merriam.

    b.     On October 11, 2018, the Debtor transferred $5,000.00 to Defendant Merriam, using Velocity and the Velocity GB&T Account as a mere conduit.

57.     On information and belief, the two transfers of $5,000.00 (totaling $10,000.00) to Defendant Merriam were:

    a.     Transfers of property of the Debtor,

    b.     For or on account of an antecedent debt owed by the Debtor to Merriam before such transfers were made,

    c.     Made while the Debtor was insolvent,

    d.     Made on or within 90 days before the Petition Date,

    e.     Transfers that enabled Defendant Merriam to receive more than it would have received in this Chapter 7 case if the transfers had not been made and Merriam received payment of its debt to the extent provided by the U.S. Bankruptcy Code.

WHEREFORE, Plaintiff Lynn H. Martinez, trustee, prays that the Court will enter judgment against Defendant Merriam in the amount of $10,000.00, along with costs and interest from the dates of the transfers, and for such other and further relief as is just.

### FOURTH CLAIM FOR RELIEF
### (11 U.S.C. § 542 – Turnover of Retainer)

58.     Plaintiff incorporates the foregoing allegations the same as if set forth herein verbatim.

59.     On information and belief, at least one of the two $5,000.00 payments was made to Defendant Merriam as a retainer for future (i.e., post-petition) services.

60.    On information and belief, Defendant Merriam held property of the estate, with a value of $5,000.00, in its trust account on the Petition Date.

61.    Pursuant to 11 U.S.C. § 542(a), Defendant Merriam is required to turn over the $5,000.00 retainer the Trustee.

WHEREFORE, Plaintiff Lynn H. Martinez, trustee, prays that the Court will enter judgment against Defendant Merriam in the amount of $5,000.00, along with costs and interest from the dates of the transfers, and for such other and further relief as is just.

Dated:  October 28, 2019          SPENCER FANE LLP
                                  By:____/s/ Philip A. Pearlman, Esq.____
                                      Philip A. Pearlman, #11426
                                      1700 Lincoln Street, Suite 2000
                                      Denver, CO  80203
                                      Ph. (303) 839-3800
                                      Fax (303) 839-3838
                                      e-mail: ppearlman@spencerfane.com
                                  ATTORNEYS FOR LYNN H. MARTINEZ,
                                  TRUSTEE

11